THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| ONSET FINANCIAL, INC., a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>FUTURE LEGENDS LLC, a Nevada limited liability company, JEFF KATOFSKY, TRUSTEE OF KATOFSKY FAMILY TRUST, and JEFF KATOFSKY, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING [22] PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:24-cv-00133-DBB-CMR<br><br>District Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |

Onset Financial, Inc. ("Onset") sued Future Legends LLC ("Future Legends"), Jeff Katofsky, Trustee of Katofsky Family Trust ("Katofsky Trust"), and Jeff Katofsky (collectively, "Defendants") on January 11, 2024 in the Third Judicial District Court of Salt Lake County.[1] On February 22, 2024, Defendants removed the case to federal court.[2] Onset now moves for summary judgment for damages based on Defendants' alleged failure to pay amounts owed under lease and guaranty agreements, as well as for a writ of replevin and injunction regarding the leased property.[3] For the following reasons, the court grants the motion.

## BACKGROUND

Onset entered into various agreements with Future Legends, wherein Onset leased to Future Legends certain personal property and equipment consisting of various stadium, hotel,

---

[1] Notice of Removal, ECF No. 1, filed February 22, 2024.
[2] *Id.*
[3] Pl.'s Mot. Summ. J. ("Pl.'s Mot."), filed on May 16, 2024, ECF No. 22.

1

and IT equipment (the "leased Property").[4] This lease was primarily governed by the (1) Master Lease Agreement ("Master Lease");[5] (2) Master Progress Payment Agreement ("MPPA");[6] and (3) Lease Schedule ("Schedule"),[7] collectively referred to as the "Lease." Under the initial Lease, Future Legends would provide Onset with monthly payments of $242,550.00 in exchange for the leased Property for a term of 30 months.[8]

Future Legends also had to provide two deposits. First, Future Legends paid a cash security deposit in an amount equal to twenty percent (20%) of the Total Property Cost of $7,000,000.00, which amounted to $1,400,000.[9] Second, Future Legends paid a deposit equal to the monthly rent of $242,550.00.[10] The MPPA further provided that Future Legends could request Onset to purchase and pay for certain property and then lease the property to Future Legends in exchange for Progress Payment Charges.[11] Katofsky Trust and Jeff Katofsky each executed a Guaranty Agreement by which they guaranteed the payment and performance of all of Future Legends' obligations under the Lease.[12]

On April 28, 2023, Future Legends filed a lawsuit against Onset in the Superior Court of the State of California based on a dispute regarding certain Progress Payment Charges and the date on which the Base Period of the Lease would begin.[13] The parties settled the lawsuit through executing a Settlement and Lease Modification Agreement ("Settlement"), dated May 30,

---

[4] *See* Acceptance and Delivery Certificate, ECF No. 23-4.
[5] Master Lease Agreement No. OFI1545438 dated February 16, 2023, ECF No. 23-1 ("Master Lease").
[6] Master Progress Payment Agreement dated February 16, 2023, ECF No. 23-2 ("MPPA").
[7] Lease Schedule No. 001 to Master Lease Agreement No. OFI1545438 dated February 16, 2023, including Amendment No. 1 to Lease Schedule No. 001 dated April 1, 2023, ECF No. 23-3 ("Lease Schedule").
[8] Lease Schedule 1.
[9] *Id.* at 1–2.
[10] *Id.* at 1.
[11] MPPA 1.
[12] Guaranty Agreements dated February 16, 2023, ECF Nos. 23-7, 23-8.
[13] Settlement and Lease Modification Agreement dated May 30, 2023, ECF No. 23-6 ("Settlement").

2

2023.[14] The Settlement resulted in a few key changes to the Lease and accompanying documents. First, it clarified that the Base Period of the Schedule began on April 1, 2023.[15] Second, it provided that the deposits would not be subject to Progress Payment Charges.[16] Third, it reduced the Total Property Cost from $7,000,000.00 to $5,687,856.60 and the monthly rental payments from $242,550.00 to $197,254.87.[17] As a result, Future Legends' required deposits were reduced to $1,137,571.32 (20% of the Total Property Cost) and $197,254.87, respectively.[18] Due to the difference in the required deposits, as well as certain sums owed to Onset, the parties reconciled their outstanding payments through Future Legends paying the net balance remaining.[19] Finally, Defendants released all claims and liabilities against Onset that they had as of May 30, 2023 that were in any way related to the Lease.[20]

Future Legends stopped making payments after November 1, 2023, which was the eighth payment due under the Lease.[21] The lease included an acceleration clause and a liquidated damages schedule, which would entitle Onset to, among other things, "declare immediately due and payable all amounts due or to become due," "repossess, recover, or sell the Property," and "recover the Stipulated Loss Value of the Property."[22] Under the Stipulated Loss Schedule, dated April 1, 2023, the Stipulated Loss Value following default on the eighth monthly payment is

---

[14] *Id.*
[15] *Id.* § 1.b.
[16] *Id.* § 1.a.
[17] *Id.* § 1.c., e.
[18] *Id.*
[19] *Id.* § 2.
[20] *Id.* § 5.
[21] Defs.' Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n") 2, 10–11 ¶ 15, filed July 30, 2024, ECF No. 30.
[22] Master Lease § 19.

$6,918,299.[23] Thus, Onset brought the instant summary judgment motion seeking to enforce the Master Lease and Guaranty Agreements.[24]

## STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] "[T]he moving party carries the initial burden of demonstrating a lack of genuine issue of material fact," and thereafter, "the burden shifts to the nonmoving party 'to set forth specific facts showing that there is a genuine issue for trial.'"[26] However, when the moving party bears the burden of proof at trial, the "*showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.*"[27] "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment."[28] And when applying the Rule 56 standard, the court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party."[29]

## DISCUSSION

**A.     Breach of Contract Claim**

The parties agree that Utah law applies. Under Utah law, there are four elements to a breach of contract claim: "(1) a contract, (2) performance by the party seeking recovery,

---

[23] Stipulated Loss Schedule dated April 1, 2023, Ex. B to the Lease Schedule, ECF No. 23-3 ("Stipulated Loss Schedule").
[24] Pl.'s Mot.
[25] Fed. R. Civ. P. 56(a).
[26] *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015).
[27] *Id.* (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)).
[28] *Id.* (quoting 11 James WM. Moore et al, *Moore's Federal Practice* § 56.40 (3d ed. 2015)).
[29] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1182 (10th Cir. 2003).

4

(3) breach of the contract by the other party, and (4) damages."[30] Defendants do not dispute that they entered into the various Lease, Guaranty, and Settlement Agreements, that Onset provided the leased Property, and that they made no payments after November 1, 2023.[31] Instead, Defendants state that there are genuine issues of material fact regarding "(1) the certainness of the sum sought to be recovered by Plaintiff; and (2) whether Plaintiff's noncompliance with the terms of the Settlement and Lease Modification Agreement constitutes a material breach of the Lease."[32]

Defendants' arguments essentially fall into three categories. First, they argue that Onset failed to properly account for Future Legends' past payments in arriving at its damages figure. Second, they argue that Onset's Stipulated Loss Value is based on the original $7 million Total Property Cost instead of the reduced value. And third, Defendants argue that Onset's cited Declaration of Remington Atwood lacks proper foundation. The court considers each in turn.

  1.  *Future Legends' Past Payments*

Defendants argue that there is a discrepancy regarding whether Onset properly accounted for Future Legends' deposits and payments made prior to the Settlement in Onset's damages calculations.[33] Specifically, Defendants argue:

> "(1) Future Legends' $1,400,000.00 CSD was at no point funded against the original Total Property Cost of $7,000.000.00 or the reduced Total Property Cost of $5,687,856.60; (2) the original DTL payment of $242,550.00 was not correctly funded against the original or thereafter reduced Total Property Cost; and

---

[30] *Bair v. Axiom Design, LLC*, 2001 UT 20, ¶ 14, 20 P.3d 388.
[31] Defs.' Opp'n ¶¶ 1, 2, 5, 6–9. Throughout their responses to Onset's statement of undisputed facts and arguments, Defendants discuss making payments from January to November 2023, *id.*, in addition to arguing that Onset should have credited certain payments towards the December 2023 amount due. *Id.* ¶¶ 11, 13, 21. Yet, Defendants also attach an exhibit of a spreadsheet that appears to indicate one or more payments in December 2023. Defs.' App. of Evid., ECF No. 30-3. Aside from not explicitly stating in their brief or accompanying declaration that Defendants made payments in December 2023, the spreadsheet lacks any foundation or evidentiary support and is not considered by the court.
[32] *Id.* at 19.
[33] *Id.* at 20–24.

5

>   (3) Future Legends' payments from January 2023 to November 2023 (inclusive of eight (8) Monthly Rental Payments (of $207,551.72 each)) ultimately totaling $1,831,925.96 was not credited against the Total Property Cost.[34]

Similarly, Defendants argue that Onset breached the Settlement by failing to use these payments to fund against the Total Property Cost, and because Onset's Stipulated Loss Value was based on a Stipulated Loss Schedule derived from the original $7 million Total Property Value instead of the reduced amount.[35]

Defendants' arguments are unavailing and conflict with the terms of the Settlement. Section 2 of the Settlement, titled "Reconciliation of Payments" includes two charts detailing payments made by Future Legends and amounts owed to Onset.[36] The first chart—depicting payments made by Future Legends—lists, among other payments, the two deposits of $1,400,000.00 and $242,550.00.[37] The second chart lists outstanding payments owed to Onset, including, among others, the reduced deposits of $1,137,571.32 and $197,254.87.[38] The parties agreed that the figures owed were accurate.[39] Because the payments due to Onset were greater than the payments made by Future Legends, Future Legends had to pay the remaining net balance.[40]

The parties further agreed that execution of the Settlement would not constitute a release or waiver of any obligation of Defendants under the Lease or Guaranty, including Future Legends' obligation to make payments under the Schedule.[41] Finally, as part of the Settlement,

---

[34] *Id.* at 22.
[35] *Id.* at 23–24.
[36] Settlement § 2.
[37] *Id.* The $242,550.00 deposit was made in two payments as reflected in the chart: $142,550.00 and $100,000.00. *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* The net balance totaled $30,307.07. *Id.*
[41] *Id.* § 3.

Defendants released all claims and liabilities against Onset that they had as of May 30, 2023 that were in any way related to the Lease.[42] Pursuant to these terms, Defendants waived any claims regarding payments made between January 2023 and May 30, 2023. Moreover, the reconciliation specifically accounted for the deposits paid prior to the reduction in the Total Property Cost by listing the paid deposits and the reduced deposits in the applicable charts used to calculate the net balance owed.[43] As such, there is no dispute of material fact regarding Onset's damages calculations relating to Future Legends' deposits and payments.

### 2. Accuracy of Stipulated Loss Value

Next, Defendants argue that the Stipulated Loss Value is incorrect because it is based on the February 16, 2023 Lease and the original Total Property Cost of $7 million instead of the reduced Total Property Cost of $5,687,856.60.[44] And relatedly, although not mentioned in the argument section, Defendants contend that the attorney fee provisions in the Lease and Settlement are inapplicable because of the Stipulated Loss Value's alleged inaccuracy.[45]

However, the Stipulated Loss Schedule, dated April 1, 2023, demonstrates that the Stipulated Loss Value is accurate, and the Stipulated Loss Schedule is based on the reduced Total Property Cost of $5,687,856.60. In the Stipulated Loss Schedule, the Stipulated Loss Value is stated as a dollar amount, based on a percentage of the Total Property Cost as of each anticipated Monthly Rental payment.[46] As an example, the Stipulated Loss Percentage after the 30th payment is 50% and is stated as a Total Stipulated Loss Value of $2,843,928.[47]

---

[42] Id. § 5.
[43] Id. § 2.
[44] Defs.' Opp'n 23–24.
[45] Id. ¶¶ 17, 23.
[46] Stipulated Loss Schedule.
[47] Id.

$5,687,856.60 times 50% equals $2,843,928. Relevant to this motion, the Stipulated Loss Percentage after the eighth payment (the November 1, 2023 payment) is 121.63% and is stated as a Stipulated Loss Value of $6,918,299.[48] $5,687,856.60 times 121.63% equals $6,918,299, which is precisely the amount sought by Onset in this action. This demonstrates that the Stipulated Loss Schedule accurately reflects the reduction in the Total Property Cost.

      3.      *Objections to Declaration of Remington Atwood*

Finally, Defendants argue that Remington Atwood's declaration is inadmissible because he fails to set forth the required personal knowledge under Federal Rule of Evidence 602.[49] Rule 602 provides that, with the exception of experts, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Rule 602's personal knowledge standard "is not difficult to meet."[50] "A court should exclude testimony for lack of personal knowledge 'only if in the proper exercise of the court's discretion it finds that the witness could not have actually perceived or observed that which he testifies to.'"[51]

Mr. Atwood, Onset's Chief Financial Officer, states that "[a]s part of my responsibilities with Onset, I have custody of the records and files pertaining to the lease and the guaranties that are the subject of this action, and I have reviewed the records prior to executing this Declaration."[52] He continues that "[t]he statements contained herein are either based upon my own personal knowledge, or upon information reasonably available to me from Onset's business

---

[48] *Id.*
[49] Decl. of Remington Atwood ("Atwood Decl."), ECF No. 23-9.
[50] *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1132 (10th Cir. 2014).
[51] *Id.* (citing *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997)).
[52] Atwood Decl. ¶¶ 2, 3.

8

records."[53] Mr. Atwood further attests that the records pertaining to the lease and guaranties at issue in this case are kept in the ordinary course of business at Onset.[54] He then proceeds to testify regarding the parties' various legal agreements, that Onset performed its obligations under the Lease, and Defendants defaulted under the Lease and Guaranty Agreements by failing to pay amounts due on and after December 1, 2023.[55]

Defendants do not explicitly challenge the admissibility of the underlying legal documents Mr. Atwood relies on (nor could they),[56] but instead challenge whether Mr. Atwood has sufficient personal knowledge. They argue that Mr. Atwood fails to sufficiently lay foundation for: (1) the manner in which any or all of the documents at issue are made and regularly kept as business records; (2) how any of those documents were entered into and executed; (3) his personal knowledge of tender by Future Legends of the deposits; and (4) how he knows that Plaintiff performed the entirety of its obligations under the Lease.[57]

These arguments fail. First, Defendants do not dispute that they entered into the contracts at issue.[58] These legal agreements are not hearsay because they constitute acts of legal significance, not a statement offered for its truth.[59] Even if they were, it is sufficient for Mr. Atwood, the CFO, to testify that the documents were kept under the ordinary course of business

---

[53] *Id.* ¶ 4.
[54] *Id.* ¶ 5.
[55] Atwood Decl.
[56] Aside from Mr. Atwood's testimony that the Lease and Guaranty agreements were kept in the ordinary course of business, the documents are non hearsay because they constitute acts of legal significance, not a statement offered for its truth. *Cagle v. The James St. Grp.*, 400 F. App'x 348, 356 (10th Cir. 2010); *see also* Fed. R. Evid. 801.
[57] Defs.' Opp'n 24–26.
[58] Defs.' Opp'n ¶¶ 1, 2, 5, 6–8; Settlement 1.
[59] *Cagle v. The James St. Grp.*, 400 F. App'x 348, 356 (10th Cir. 2010); *see also* Fed. R. Evid. 801.

9

for the court to accept that they are admissible as business records. Notably, Defendants have not presented any basis for finding that these contractual documents are not reliable.[60]

It is of no consequence that Mr. Atwood was not Onset's signatory on these documents. Rule 602 does not require first-hand observation or experience. Instead, personal knowledge may be acquired by reviewing records, so long as those records are not inadmissible as hearsay.[61] Accordingly, there is nothing precluding Mr. Atwood from testifying based on knowledge gained from reviewing the various legal agreements at issue in this case.[62]

Further, the information contained in Mr. Atwood's declaration can be gleaned from the contractual documents themselves. For example, the Settlement explicitly states the amounts of the original and reduced deposits, as well as a chart displaying the amount tendered by Future Legends.[63] Further, the Acceptance and Delivery Certificate, signed by Jeff Katofsky on behalf of Future Legends, states that "all items of Property . . . have been delivered and received" and "are operating satisfactorily in all respects."[64] Defendants do not otherwise present any evidence to create a dispute of material fact regarding Onset's performance.[65]

Accordingly, Mr. Atwood's declaration is admissible. As the court has already determined that there is no material dispute that Defendants breached the Lease and Guaranty

---

[60] Defs.' Opp'n ¶¶ 1, 2, 5, 6–8; *see also Timberlake Const. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 341 (10th Cir. 1995) ("The rationale behind the business records exception is that such documents have a high degree of reliability because businesses have incentives to keep accurate records.").
[61] *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123–24 (10th Cir. 2005); *Hipwell v. Air & Liquid Sys. Corp.*, No. 1:20-cv-00063-JNP-JCB, 2022 WL 3999955, at *5 (D. Utah Aug. 31, 2022).
[62] The court notes that it does not rely on Mr. Atwood's interpretations of any of the contractual terms, as the contract is unambiguous.
[63] Settlement § 2.
[64] Acceptance and Delivery Certificate.
[65] In fact, Defendants only state that there are genuine issues of material fact regarding "(1) the certainness of the sum sought to be recovered by Plaintiff; and (2) whether Plaintiff's noncompliance with the terms of the Settlement and Lease Modification Agreement constitutes a material breach of the Lease." Defs.' Opp'n 19.

10

Agreements by failing to make payments after November 2023 and that there is no genuine material dispute as to the relevant facts, the court next determines the contractual remedy.

**B.     Contractual Remedy**

*1.     Monetary Damages*

Section 19 of the Master Lease provides that Onset may:

> with or without terminating the Lease, and without waiving its right herein to repossess, recover, or sell the Property, recover the Stipulated Loss Value of the Property, together with all accrued but unpaid late charges, interest, taxes, penalties, and any and all other sums due and owing under the Schedule as of the Rent payment date immediately preceding the date of default.[66]

Late charges are capped at ten percent (10%) of any unpaid rental payment.[67] The parties set an interest rate of eighteen percent (18%) per annum on the above amounts, from the date of default until paid.[68] The Master Lease further provides that, upon default by Future Legends, Onset is "entitled to recover all costs and expenses incurred by [Onset] . . . including without limitation, reasonable attorney fees and costs incurred in connection therewith or otherwise resulting or arising from Lessee's default."[69] The Guaranty agreements provide for the same relief.[70]

Onset asserts that it is entitled to contractual damages of $6,918,299.00 (the Stipulated Loss Value), plus sales taxes on this amount, plus late charges of $83,020.68, plus eighteen percent (18%) per annum interest on all of these amounts from and after December 10, 2023, plus additional expenditures such as property or sales tax, plus attorney fees and costs, less deposits held by Onset in the amount of $1,334,826.19.[71]

---

[66] Master Lease § 19(o).
[67] *Id.* § 3.
[68] *Id.* § 19.
[69] *Id.*
[70] Guaranty Agreements ("Guarantor is willing to unconditionally guarantee the performance of all of Lessee's obligations under each Lease pursuant hereto.").
[71] Pl.'s Mot. 11, ¶ 16.

11

The court has already determined that Onset properly calculated the Stipulated Loss Value of $6,918,299.00, due to Defendants' failure to make payments after November 2023 (the eighth payment). Onset also properly calculated the total deposits held by Onset.[72] In their brief, Defendants do not dispute the calculation of the late charges (which appears to be approximately 10% of the value of four monthly payments after tax), except as to the Stipulated Loss Value,[73] which was properly calculated. Therefore, the court finds that Onset is entitled to its requested damages.

    2.    *Writ of Replevin and Injunction Restraining Defendants from Using Leased Property*

Finally, Onset seeks a writ of replevin to recover the leased Property, as well as an injunction restraining Defendants from using the leased Property.[74] The Master Lease provides that, upon default under the Lease by defendant Future Legends, Onset may "repossess, disable or demand Lessee to disable the Property wherever found, with or without legal process," "sell, re-lease or otherwise dispose of any or all of the Property," and "exercise any other right or remedy which may be available to it under the Uniform Commercial Code or any other applicable law."[75] In addition, Future Legends agreed, upon demand by Onset, to "immediately cease the use of any and all Property" and further agreed "to injunctive and other equitable relief in favor of [Onset] restraining Lessee, or any of Lessee's affiliates, from using the Property after an Event of Default."[76] These remedies are consistent with Onset's rights under the UCC.[77]

---

[72] Future Legends paid two deposits of $1,137,571.32 (20% of the Total Property Cost) and $197,254.87 (the monthly lease payment), which total $1,334,826.19.
[73] Defs.' Opp'n ¶¶ 16, 20.
[74] Pl.'s Mot. 11–12.
[75] Master Lease § 19(i), (j) (k).
[76] *Id.* § 19(p), (q).
[77] *See, e.g.*, Utah Code § 70A-2a-525(2) ("if agreed, after the default by the lessee, the lessor has the right to take possession of the goods."); *id.* § 70A-2a-527 (titled, "Lessor's rights to dispose of goods."); *id.* § 70A-9a-609 (titled, "Secured party's right to take possession after default."); *id.* § 70A-9a-610 (titled, "Disposition of collateral after

Accordingly, because the court finds that Future Legends breached the Lease, Onset is entitled to a writ of replevin to recover the leased Property, an injunction preventing Defendants' further use of the leased Property, and a judgment allowing judicial enforcement of these remedies by execution and sale.

## ORDER

Accordingly, Onset's Motion for Summary Judgment for breach of contract and a writ of replevin is **GRANTED**.

Onset is awarded judgment against Defendants, jointly and severally, in an amount equal to the sum of $6,918,299.00 (the Stipulated Loss Value) plus late charges in the amount of $83,020.68, together with interest on all of these amounts from and after December 10, 2023, both before and after judgment, at the contract rate of eighteen percent (18%) per annum, less deposits held by Onset in the amount of $1,334,826.19.

It is **FURTHER ORDERED** that Defendants are enjoined from further use of the leased Property.

It is **FURTHER ORDERED** that Onset is authorized to enter the property where the Leased Property is located at a reasonable hour and to repossess the Leased Property.

---

default."). The UCC allows Onset to enforce these remedies judicially. *See id.* § 70A-2a- 501(3) ("the party seeking enforcement may reduce the party's claim to judgment, or otherwise enforce the lease contract by self-help or any available judicial procedure or nonjudicial procedure."); *id.* § 70A-9a-601(1)(a) (secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure.").

Signed December 3, 2024.

BY THE COURT

_____
David Barlow
United States District Judge